UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02249-WYD

DIEU T. HUA,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

**ORDER**

_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for Supplemental Security Income ["SSI"] under Title XVI of

the Social Security Act ["the Act"].  For the reasons stated below, this case is reversed

and remanded for further factfinding.

      Plaintiff was born in June 1958, and is a 49 year-old refugee from Vietnam

(Transcript [Tr."] 76).  She has a second-grade education from Vietnam and worked in

the past as an assembly worker (*id.* 36, 91, 96).  She does not speak English and

speaks Cambodian and Vietnamese (*id.* 89).

      In October 2003, Plaintiff filed her application for SSI claiming that she became

disabled on September 15, 1998, due to "severe back and pain on joints[,], worse on

both knees as a result of degenerative disc diseases, osteoarthritis or gouty arthritis

secondary to headaches, dizziness, major depression, sleep difficulty, insomnia,

memory and concentration difficulty, etc" (Tr. 79-88).  Plaintiff later amended her onset

date to January 5, 2004 (*id*. 142).  Plaintiff completed questionnaires in which she

alleged disabling pain, medication side effects, and limited ability to perform most daily

activities (*id*. 104-09).

Plaintiff's claims were denied initially (Tr. 53, 57-60), and Plaintiff filed a timely

request for a hearing.  A hearing was held on June 29, 2006 (*id*. 239-52).  On

November 1, 2006, the Administrative Law Judge ["ALJ"] issued a decision denying

Plaintiff's claim (*id*. 31-40).  The ALJ concluded that Plaintiff could perform her past

relevant work as an assembler (*id*. 39-40).  Alternatively, the ALJ found that Plaintiff

could perform other unskilled work that required medium exertion (*id*. 40).  Accordingly,

he concluded that Plaintiff was not disabled at any time since October 22, 2003, the

date of the filing of Plaintiff's last SSI application (*id*.).  This decision is discussed in

more detail below.

The Appeals Council denied Plaintiff's request for a review (Tr. 5-17).  The ALJ's

decision is the final administrative decision, and this case is ripe for review pursuant to

42 U.S.C. § 405(g).

II.    THE ALJ'S DECISION

The ALJ made the following findings in his November 2004 decision:

1.    Plaintiff has not engaged in substantial gainful activity since September
      15, 1998 (Tr. 36).

2.    Plaintiff has the following severe impairment: chronic headaches (*id*.).
      She does not have an impairment or combination of impairments that met
      or medically equaled one of the impairments in 20 C.F.R. Part 404,
      Subpart P, Appendix 1 (*id*.).  The ALJ noted that there is no listing
      corresponding to a diagnosis of chronic headaches of any etiology (*id*.).

3. Plaintiff has the residual functional capacity ["RFC"] to lift and carry 50 pounds occasionally and 25 pounds frequently, sit, stand or walk for 8 hours each in an 8 hour work day and bend, squat, stoop and crouch without restriction (*id.*). Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these impairments are not entirely credible" (*id.* 37). "The claimant's statements during two consultative evaluations suggest that she overstates her symptoms and limitations" (*id.*). Further, "[t]he objective medical evidence also supports a conclusion that the claimant is not disabled" (*id.* 38).

4. Plaintiff is capable of performing her past relevant work as an assembly worker as described by Plaintiff's Disability Report (*id.* 39-40).

5. "[E]ven it were determined that the claimant's prior earnings were insufficient to establish the performance of substantial gainful activity,. . . [Plaintiff] retains the residual functional capacity to perform the full range of unskilled, medium work activity. Therefore, Medical Vocational Rule 203.25 directs a conclusion that she is not disabled (*id.* 40).

III.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.* Finally, the decision of the Commissioner must stand or fall based on the reasons given by the ALJ or the Appeals Council. *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance . . . . Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm").

My review of the record reveals a number of errors that require the ALJ's decision to be reversed and remanded for a rehearing. I address these below.

B.      Whether the ALJ's Decision is Supported by Substantial Evidence

1.      The ALJ's Decision to Give "Little Weight" to the Opinion of Plaintiff's Treating Physician Dr. Tran

I first address the ALJ's rejection of the opinions of Plaintiff's treating physician Dr. Tran. The ALJ rejected those opinions due to a lack of objective medical evidence in connection with his diagnosis of Plaintiff's migraines (Tr. 38-39). Plaintiff argues that there is no objective test for diagnosing migraine headaches, and that Dr. Tran's opinion was based on acceptable diagnostic techniques for migraines. Accordingly, she concludes that the ALJ erred in not giving Dr. Tran's opinions controlling weight.

Turning to my analysis, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dept. of Health and Human Services*, 52 F.3d 288, 290 (10th Cir. 1994).

Generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). As to other medical sources, the opinion of an examining physician or psychologist is entitled to less weight than that of a treating physician or psychologist, and the opinion of a nonexamining physician or psychologist is entitled to the least weight. *Robinson v. Barnhart*, 366 F.3d 1079, 1084 (10th Cir. 2004); *Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003).

Dr. Tran documented that Plaintiff has chronic headaches with "aching pain" in the "Frontal and bitemporal area moderate to severe in intensity" (Tr 190). He found that the symptoms associated with that are photosensitivity, visual disturbances and inability to concentrate (*id.*). The frequency of the headaches was noted to be every 2

to 3 days with the duration of the headaches being approximately a day (*id*. at 190-91).

Triggers for the headaches were noted to be noise and strong odors, and lying in a dark

and quiet room and cold packs makes the headaches better (*id*. at 191). Objective

signs of headaches included "impaired sleep" and the impairment was stated to be

migraines (*id*. at 191-92). Dr. Tran concluded in that report that Plaintiff was not a

malingerer, that the migraine impairment lasted or was expected to last at least 12

months, and that during the period Plaintiff has a headache, she would be precluded

from performing even basic work activities (*id*. at 192). If Dr. Tran's opinion is credited,

it would render Plaintiff unable to work on a "regular and continuing basis" as required

by Social Security Ruling 96-8p, 1996 WL 374184.

I find that the ALJ did not properly weigh Dr. Tran's opinions and that the reasons

given for rejecting those opinions are not supported by substantial evidence. I first note

that the ALJ stated that he gave "very little weight" to Dr. Tran's findings. However, it

appears that he gave it no weight. The ALJ should have been specific in noting what

weight he gave the treating physician's opinions. *See Robinson*, 366 F.3d at 1082 ("'an

ALJ must give good reasons . . . for the weight assigned to a treating physician's

opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinions and the reason for

that weight'") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

Second, Dr. Tran's findings regarding Plaintiff's headaches and the fact that

Dr. Tran found these headaches to be an impairment in the form of migraines are

specific medical findings that could not be ignored by the ALJ. *See Washington v.

Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about

Plaintiff's condition or impairments "are specific medical findings" and an ALJ errs in rejecting those findings in the absence of conflicting evidence). Indeed, the medical records from Dr. Tran are consistent in documenting headaches, as well as back pain and other pain (*id.*). The administrative record reveals that over the course of years of treatment with Dr. Tran, there were multiple references to Plaintiff's headaches. Those headaches are documented in almost every medical record and at almost every medical appointment/treatment. As the court noted in a similar case, "[t]he ALJ . . . failed to acknowledge the abundant documentation of migraine diagnoses. . . as being "objective" evidence" to support the treating physician's opinions. *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1216 (S.D. Ala. 2007).

Further, I agree with Plaintiff that Dr. Tran was not required to state objective medical findings that supported his opinion. The Tenth Circuit holds that an ALJ errs when he requires such objective evidence for impairments where there is no such test. *Moore v. Barnhart*, No. 03-3243, 2004 WL 2634571, at *8-9 (10th Cir. 2004) (fibromyalgia)*; Sisco v. U.S. Dept. of Health and Human Servs.*, 10 F.3d 739, 743-44 (10th Cir. 1993) (chronic fatigue syndrome). It has also held that it is aware of no medical procedures to objectively evaluate either the severity of a migraine or pain. *Pennington v. Chater*, No. 96-5177, 2007 WL 296684, at *3 (10th Cir. 1997); *Celebrezze v. Warren*, 339 F.2d 833, 836-37 (10th Cir. 1964).[1] *Pennington* made clear that "where no such conclusive tests exist, the failure to produce such test results is . . .

---

[1] Many federal district courts have followed this approach. *See, e.g., Thompson v. Barnhart,* 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006); *Stebbins v. Barnhart,* No. 03-C-0117-C, 2003 WL 23200371, at *2 (W.D. Wis. 2003); *Diaz v. Barnhart,* No. Civ.A 01-CV-0525, 2002 WL 32345945, at *6 (E.D. Pa. 2002); *Ortega v. Chater,* 933 F. Supp. 1071, 1075 (S.D. Fla. 1996); *Federman v. Chater,* No. 95 Civ. 2892, 1996 WL 107291, at *2 (S.D.N.Y. 1996).

an improper basis for discrediting a claimant's uncontroverted testimony." *Id.*, 2007 WL 296685, at *3. Thus, it was error for the ALJ to have denied disability based on the lack of such evidence. This error is particularly egregious given the fact that Plaintiff's counsel several times pointed out the nature of migraines and provided the ALJ an article about migraines which states, "No diagnostic tests are useful, except to exclude other causes" (Tr. 139, 134, 251). The ALJ ignored this in making his decision.[2]

In any event, Dr. Tran did state an objective medical finding that supported the migraine impairment—impaired sleep. The ALJ is not a physician and his decision to discredit that objective medical finding (and the entire opinion of Dr. Tran) is an improper attempt to substitute his judgment for that of the medical practitioner.

The ALJ also found that Dr. Tran's progress reports from 2002 through 2006 cited diagnoses but "provided no evidence that physical examinations were ever performed" (other than one note of February 22, 2004) (Tr. at 38). He appeared to reject the reports based on that finding. However, the reports do appear to document examinations with Plaintiff—for example, they reflect findings as to lungs and chest, extremities, neurology, nose and throat (*id.* 194-212). The ALJ's finding that the reports

---

[2]   The Commissioner also failed to acknowledge this when arguing in his response brief that the lack of objective evidence supported the ALJ's decision. The Commissioner did acknowledge that migraine headaches cannot be established by objective findings alone, but went on to argue that the ALJ properly noted the absence of diagnostic tests and the essentially normal findings on physical examinations that were inconsistent with the extreme limitations in Dr. Tran's reports. Again, the Commissioner is missing the point of the law on this issue. As noted by the above authority, migraines and chronic headaches are not diagnosed through diagnostic tests such as EEG's or through physical findings on examinations such as range of motion. *See, e.g., Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006) ("Migraine headaches are particularly unsusceptible to diagnostic testing"); *Ortega v. Chater,* 933 F.Supp. 1071, 1075 (S.D.Fla.1996) (present-day laboratory tests cannot prove the existence of migraine headaches). The *Ortega* court noted that, while laboratory tests cannot prove the existence of migraine headaches, there are medical signs which should be viewed as "objective evidence." This includes symptoms such as nausea, photophobia, dizzy spells, etc. *Id.*; *Wiltz.* 484 F. Supp. 2d at 532. Many of those medical signs were present in this case.

are not based on examinations is thus not supported by the record and/or is improper speculation. At the very least, if the ALJ felt that the reports were unclear on this issue, he should have contacted Dr. Tran to clarify this issue. *See McCGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

Even when an ALJ decides that a treating physicians' opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d at 1120 (10th Cir. 2004). Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quoting *Watkins*, 350 F.3d at 1300). The ALJ's opinion should reflect that he gave these reports deference and weighed them, and that he gave "any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

In this case, the ALJ's opinion does not reflect that he gave any deference to Dr. Tran's opinions and findings or that he considered the applicable factors in connection with weighing his opinion. For example, having directed her care since 1990 (Tr. 176), Dr. Tran has "obtained a longitudinal picture" of Plaintiff's impairment. 20 C.F.R. §416.927(d)(2)(i). Further, he has prescribed a variety of medications, including Ultram, Tylenol #3 and Darvocet, that substantiate his opinions that Plaintiff suffered from chronic headaches and pain (*see e.g.*, Tr. 194, 199, 203, 209, 220). According to Plaintiff, Ultram (or tramadol) is used to relieve "moderate to moderately severe pain". Opening Br. at 8-9 (citation omitted). The ALJ did not properly consider these factors.[3]

_____

[3] According to one court, in cases involving complaints of disabling pain due to migraine headaches, "courts look to other objective medical signs to determine whether the claimant's complaints

-9-

Finally, I note that Dr. Tran provided opinions that Plaintiff was disabled (Tr. 39.) The ALJ did not discuss this or give those opinions any weight. This was error. While disability is ultimately an issue reserved for the Commissioner, Dr. Tran's findings on this issue still needed to be considered and weighed. *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("opinions from any medical source on issues reserved to the Commissioner must never be ignored . . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability. . . ").

Further, as Plaintiff notes in her reply brief, Dr. Tran did more than simply declare that Plaintiff was unable to work. He concluded that Plaintiff would be unable to perform basic work activities during a headaches. This is consistent with Dr. Tran's observation that Plaintiff's headaches occurred several times a week and required her to lay down in a dark and quiet room in order to obtain relief (Tr. 191). An individual who must take frequent unplanned rest breaks and/or frequent absences from work due to a disability such as migraines may be unable to perform substantial gainful activity ["SGA"]. *See Wiltz v. Barnhart*, 484 F. Supp. 2d 524, 534-35 (W.D. La. 2006) (the need to frequently rest in a dark room impacts attendance at work and thus ability to work since to be

---

are consistent with the existence of disabling migraine pain, including whether the claimant's migraines are accompanied by drowsiness, dizziness, nausea, vomiting and blurred vision, whether the claimant has been prescribed medication for migraines and the associated symptoms of nausea and vomiting, whether the plaintiff is sensitive to light (photophobic) or sound, whether the claimant has received continuing and regular treatment for migraines-including outpatient and emergency treatment-and whether the claimant's symptoms are consistent with those of migraine headaches". *Wiltz v. Barnhart*, 484 F. Supp. 2d 524, 532 (W.D. La. 2006); *see also Newman v. Chater*, 1997 WL 327091, at *5 (D. Kan). An ALJ's finding of disability was reversed where the evidence showed that the answers to all of the aforementioned questions was yes. *Newman*, 1997 WL 327091, at *5. In this case, the answer to all of the above questions also appears to be yes. This was not properly considered by the ALJ.

capable of performing substantial gainful activity a person must be able to both obtain and hold a job in a realistic work setting). This must be considered on remand. *See Wallick v. Astrue*, No. 06-1346-MLB, 2007 WL 4239463, at *5 (D. Kan. 2007) (ALJ required on remand to consider impact of frequent breaks on claimant's ability to work).[4]

### 2. The ALJ's Decision to Give "Great Weight" to the Opinions of the Consultative Examiners

I now turn to the opinions of consultative examiners Drs. Valette and Moran. Dr. Valette performed a consultative psychological examination and Dr. Moran performed a consultative physical examination. With one exception, related to Dr. Moran's finding that Plaintiff might be depressed, the ALJ found that the consultative exams of Drs. Valette and Moran "are well supported by objective clinical signs and findings and are therefore entitled to great weight" (Tr. 39).

I find that the ALJ must reassess the weight to be given to these consultative examiners on remand. First, since the ALJ failed to properly weigh and assess the opinions of Dr. Tran, Plaintiff's treating physician, this will necessarily require that all the medical evidence be reweighed. Further, the ALJ's task was to examine the consulting physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher*, 52 F.3d at 290. The ALJ did not appear to follow this rule. This also must be rectified on remand.

---

[4] Further, the ALJ did not assess all of Plaintiff's impairments in combination, including those found not to be severe. For example, there was evidence in the record of impaired sleep, as well as back and knee pain (Tr. 191, 194-196, 202-212). This also needed to be properly considered. *See* SSR 96-8p, 1996 WL 374184, at *5 (1996).

As to the actual opinions of Drs. Valette and Moran, I note that the Tenth Circuit has specifically held that the "'findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). The reports from Drs. Valette and Moran appear to be "'based on the most limited sort of contact and examination.'" *Id.*

For example, as to Dr. Moran, she did not appear to ask Plaintiff about or assess classic migraine symptoms in her examination, such as photophopia, dizzy spells, sensitivity to noise and odors, and visual disturbances. While she acknowledged the existence of Plaintiff's headaches, she concluded that given the duration of the headaches they were unlikely to be of serious etiology. However, she appeared to base her findings on the fact that there was no evidence of any objective medical abnormalities (Tr. 187-89). This was error since, as explained above, there generally are no objective tests for diagnosing migraines.

Further, as to the duration of the headaches, Dr. Moran failed to actually indicate that she asked Plaintiff how long the duration of the headaches was (noting only that Plaintiff said the headaches varied in duration and intensity (*id.* 186)). Her finding that given the duration of the headaches they were unlikely to be of serious etiology is conclusory in nature, as she does not discuss or reference any supporting clinical data for this finding, or provide any explanation for this assertion. *See Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004). "A physician's opinion [may] be rejected if it is brief, conclusory, and unsupported by medical evidence." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987); *see also Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). It

is hard to see how such conclusory findings can be found to outweigh Dr. Tran's findings based on his treating physician relationship with Plaintiff that her headaches occurred several times a week and often lasted up to a day, and that when the headaches occurred, Plaintiff obtained relief only from lying down in a dark room. However, this must be addressed by the ALJ on remand.

As to Dr. Valette, he concluded that he did not actually know how Plaintiff was doing from a psychological perspective (Tr. 185). He also found that there was a lot of conflicting information given in the examination and that it "really kind of invalidates the entire evaluation" (*id*). Thus, he did not make any specific diagnoses regarding Plaintiff's psychological condition, although he did note mild psychosocial stressors (*id.*). Accordingly, this report certainly does not appear to be the type of thorough report that is persuasive testimony. *Drapeau*, 255 F.3d at 1214. Further, it is hard to see how Dr. Valette's report could be given "great weight" given the fact that he essentially concluded that he did not know how Plaintiff was doing. This is especially true as to Plaintiff's migraines and their impact on Plaintiff since Dr. Valette, as a psychologist, was not qualified to diagnose migraine headaches.[5]

3.    Whether the ALJ Erred in Discrediting Plaintiff's Credibility

When determining the credibility of pain testimony, an ALJ should consider:  the levels of medication and their effectiveness, the extensiveness of the attempts (medical

---

[5] The only finding Dr. Valette made with respect to migraines was to remark that Plaintiff appeared to say two things about the frequency of her headaches (Tr. 185). The ALJ seized upon this point in this decision, seemingly to find that Plaintiff was not credible (*id.* 39). The ALJ failed to take into account, however, that Plaintiff had not begun to track her headaches when she saw Dr. Valette in 2004. (*Compare* Tr. 183 *with* Tr.128.) By contrast, Dr. Tran—who noted that the headaches occurred two to three times per week—made his assessment in late July 2006, after Ms. Hua had been documenting her headaches for over one year (*id.* 193).

or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). While an ALJ need not make findings regarding all of these criteria, he must in his decision discuss "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

In this case, I agree with Plaintiff that the ALJ's credibility assessment is remarkable for all the relevant evidence that was not discussed. This also must be addressed on remand. For example, the ALJ's decision makes no reference to the first *Thompson* factor—all the different medications the Plaintiff has tried to relieve her migraines. In fact, Plaintiff has been prescribed Ultram, Tylenol #3, Darvocet, Fioricet, Propoxyphene and Disalsid (Tr. 187, 194, 199, 203, 209, 220). The ALJ also did not address the third *Thompson* factor—the frequency of Plaintiff's medical contacts for her migraines. The record discloses 29 visits by Plaintiff to Dr. Tran for treatment of her headaches from May 2002 to March 2007 (Tr. 194-95, 199, 202-04, 205-06, 209-12, 219-25, 227). This oversight by the ALJ was substantial, as the agency has recognized that "[p]ersistent attempts by the individual to obtain relief of pain or other symptoms ...may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *7; *see also Hardman,* 362 F.3d at 680 (ALJ erred by failing "to expressly consider claimant's persistent attempts to

find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints").

I also note as to Plaintiff's pain that "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91) (further quotations omitted). The ALJ did not consider this in his step four analysis or in his alternative step five finding.

Moreover, I agree with Plaintiff that the ALJ's decision is troubling in terms of the ALJ's discussion of the Plaintiff's headache records. Plaintiff tracked her headaches from late June 2005 through the end of June 2006 (Tr. 117-128, 137). Yet the ALJ only stated that the Plaintiff's attorney "introduced into evidence a calendar showing the days in May 2006 on which the claimant had a headache" (*id.* 37.) A credibility determination cannot be based on an inaccurate or incomplete reading of the nonmedical evidence. *See Sisco v. U.S. Dept. of Health and Human Servs.*, 10 F.3d 739, 743 (10th Cir. 1993*)* ("[t]he ALJ built his factual basis by taking Plaintiff's testimony out of context and selectively acknowledging parts of her statements while leaving important segments out"). The ALJ likewise failed to mention or consider that both Plaintiff's treating physician Dr. Tran and consultative internist  Dr. Moran regarded Plaintiff as truthful and not malingering. (Tr. 187, 192). This is significant probative evidence that needed to be considered by the ALJ.

I also agree with Plaintiff that the ALJ improperly discredited Plaintiff's testimony as to the severity of her impairment based only on minor discrepancies in Plaintiff's testimony/statements. *See Hamlin,* 365 F.3d at 1221. First, the ALJ seized upon supposed contradictions in Plaintiff's account of her headaches to consultative psychologist Dr. Valette (Tr. 37). The discrepancy noted by the ALJ was between her initial account that she had headaches every few days with her later statement that she had daily headaches (*id.* 183). The ALJ concluded that this discrepancy "undercuts the credibility of her complaints" (*id.* 37). However, each statement is consistent with disabling headaches. Daily migraine headaches would obviously interfere with work on a sustained basis. Yet a migraine headache every few days—and lasting at least one day—would also interfere with working on a "regular and continuing basis" as envisioned by SSR 96-8p. Put another way, I agree with Plaintiff that the contradiction seized upon by the ALJ is in reality a distinction without a difference.

Further, as discussed above, the ALJ failed to take into account the fact that Plaintiff had not begun to track her headaches when she saw Dr. Valette in 2004. When she did begin to track her headaches, she had headaches almost every day during certain weeks and other weeks had several headaches (Tr. 117-28). This is consistent with her statements to Dr. Valette.

The ALJ also faulted Plaintiff for her vague statements to Dr. Valette about her impairments (Tr. 38.) The ALJ stated, "The claimant's inability or refusal to characterize the severity and nature of her symptoms in this consultative interview also renders her allegations far less credible" (*id.*). However, the ALJ failed to consider the fact that Plaintiff may have difficulty explaining herself, even with the help of an interpreter. As

-16-

Plaintiff notes, she is a Vietnamese refugee who speaks no English and who has a second grade education—obtained in Vietnam (Tr. 80, 96, 242-243). An inability to express herself is far different than a conscious refusal to do so. Further, the ALJ failed to consider the fact that Plaintiff told Dr. Valette that she had memory problems which Dr. Valette appeared to substantiate to a certain degree (Tr. 184). At a minimum, the case should be remanded for the ALJ to resolve this issue. *Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir. 2004) (reviewing tribunal cannot draw factual inferences for an ALJ).

Third, the ALJ stated that Plaintiff's statement of her daily activities was inconsistent with her allegations of disabling pain (Tr. 37-38). For example, the ALJ faulted Plaintiff for once stating that she shops when she feels well enough while she elsewhere claimed that she never shopped (*Compare* Tr. 106 *with* Tr. 183). Again, this appears to be the type of minor discrepancy that does not support a decision that the claimant is not credible. Moreover, it is well settled that an "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson,* 987 F.2d at 1490.

Fourth, the ALJ cited the remark of Dr. Moran that Plaintiff did not appear to be in any distress during the examination despite her description of her typical pain level as 8 on a scale from 0-10. (Tr. 38, 187.) Dr. Valette also noted that the physical exam did not show any restrictions (*id.* 185). However, physical examinations of patients with migraine headaches are usually unremarkable (*id.* 230). Further, an ALJ cannot discredit a claimant for her good fortune of having a reasonably good day when she

sees an agency physician. *See Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1260 (D. Kan. 2000) (ALJ should not have discredited claimant where state agency physician noted that her fibromyalgia did not appear to be "terribly" active; record reflected that claimant's condition was subject to "remissions and exacerbations").

4.     Whether the Appeals Council Erred in Not Properly Considering the New Evidence Submitted to It

Plaintiff presented additional evidence to the Appeals Council with her request for review of the ALJ's decision (Tr. 24-29, 213-27). The additional evidence included a questionnaire completed by Dr. Tran on September 21, 2007 and several treatment notes from Dr. Tran dated January 2005 through January 2007 (*id*. 24-29, 218-27). Plaintiff argues that the Appeals Council did not properly consider this evidence.

"Social security regulation 20 C.F.R. § 404.970(b) expressly authorizes a claimant to submit new and material evidence to the Appeals Council when seeking review of the ALJ's decision." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). "Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (quotations omitted). "If the evidence qualifies for consideration "and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record [the court] assess[es] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Id*.

In the case at hand, the Appeals Council states that it considered the additional evidence and found that it did not provide a basis for changing the ALJ's decision (Tr. 9.)  It stated that the additional evidence contains no objective medical findings, and is consistent with the evidence previously considered by the ALJ's decision (*id.*)  The Commissioner argues that the additional evidence would not have changed the administrative decision, and was thus not material, such that the Appeals Council properly declined review (Tr. 5-17).  I do not agree.

I find that the questionnaire completed by Dr. Tran and provided to the Appeals Council (Tr. 24) was material and that it provides further support for my finding that the ALJ's decision was not supported by substantial evidence.  The questionnaire asked Dr. Tran if he was aware of any objective test which can conclusively confirm a diagnosis of migraine headaches, to which he responded "no" (*id.*).  He also answered "yes" to questions about whether he diagnosed Plaintiffs' migraines based on her symptoms, family history and her response to treatment and that he ruled out other sources of headaches.  Finally, he answered "yes" to a question as tow whether an individual suffering from migraine headaches can have a normal exam (*id.*)

I first agree with Plaintiff that the Appeals Council committed the same error as the ALJ did in dismissing Dr. Tran's opinion because it was not based on objective medical evidence.  I also find that the evidence in the form of the questionnaire is material.  Evidence is material if it calls into question the ALJ's reasoning for rejecting a claim.  *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003); *see also Chambers*, 389 F.3d at 1142 (evidence is material if there is a reasonable possibility it would have changed the administrative decision.  *Id.* (citing *O'Dell*, 44 F.3d at 859).  Here,

Dr. Tran's follow up opinion in the questionnaire undermines the only reason given by the ALJ in rejecting Dr. Tran's opinion, namely the lack of objective medical evidence for his findings.

I also reject the Government's argument that this questionnaire should be rejected because it is "dated after the ALJ's decision."  (Def.'s Response Brief at 18.) The date of a physician's examination or opinion is not dispositive of whether it relates to the time prior to the ALJ's decision.  Medical evidence obtained after an ALJ decision should be considered by the Appeals Council "if it relates to the claimant's condition on or before the date of the ALJ's decision."  *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990); *see also Hardman,* 362 F.3d at 681.  The questionnaire appears to meet this standard.

Finally, the Commissioner argues that Dr. Tran's follow up opinion "essentially reiterated the opinion from him that was already in the record."  (Response Brief at 18) This is not true.  Dr. Tran's questionnaire responses submitted to the ALJ explained that he based his diagnosis on symptoms experienced by the Plaintiff and how those symptoms caused total disability (Tr. 190-193).  By contrast, Tran's statement to the Appeals Council summarized his overall approach in diagnosing migraines, and thereby expressly addressed the objection the ALJ had with that prior opinion (*id*. 24).

III.    CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 2, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge